IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRADLEY N.A., | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:25CV21 |
| | ) |
| FRANK BISIGNANO, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

### ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Bradley N.A. ("Bradley") brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for social security disability insurance benefits and a period of disability.[1] The Court has considered the certified administrative record and dispositive briefing from the parties. Because substantial evidence supports the determination of the Administrative Law Judge, the Court will deny Bradley's request for remand, as set forth below.

I. PROCEDURAL HISTORY

Bradley filed an application for disability insurance benefits and a period of disability in July of 2021, alleging a disability onset date of April 15, 2021. (Tr. 160-61.) The applications were denied initially and upon reconsideration. (Tr. 81-84, 87-91.) After a hearing, the Administrative Law Judge ("ALJ") determined on November 8, 2023 that Bradley was not disabled under the Act. (Tr. 17-56.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for review. (Tr. 1-6.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 6. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). Docket Entry 10. Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is automatically substituted as the defendant in this suit.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Bradley is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. § 404.1520, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Bradley had not engaged in substantial gainful activity since the alleged onset date of April 15, 2021. (Tr. 19.) The ALJ next found the

2

following severe impairments at step two: insulin dependent diabetes mellitus type I; major depressive disorder; and generalized anxiety disorder. (Tr. 19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 21.)

The ALJ next set forth Bradley's Residual Functional Capacity ("RFC") and determined that he could perform a reduced range of light work as follows:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday and sit 6 hours total in an 8-hour workday. He is able to understand, remember, and carry out instructions for 95 to 100% of an 8-hour workday. The claimant is able to occasionally interact with the public, coworkers and supervisors. He is able to concentrate and persist for simple tasks. The claimant is able to adapt to changes in a simple work setting.

(Tr. 22.) At the fourth step, the ALJ determined that Bradley was unable to perform his past relevant work. (Tr. 25.) Last, at step five, the ALJ concluded that there were other jobs in the national economy that Bradley could perform. (Tr. 26.)

## IV. DISCUSSION

In his appeal, Bradley asserts only that "[t]he ALJ erred by failing to explain the basis for the RFC conclusion that [he] 'is able to understand, remember, and carry out instructions for 95 to 100% of an 8-hour workday,' a conclusion that is arbitrary absent further explanation, preventing substantial evidence from supporting the ALJ's decision." Docket Entry 9 at 3. The record demonstrates otherwise, as set forth below.

A. The RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines*, 453 F.3d at 562. The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin

3

impairments).'" *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). Failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id*. at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if

4

the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id*. Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

- (i) [Plaintiff's] daily activities;

- (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

- (iii) Precipitating and aggravating factors;

- (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;

- (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;

- (vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

- (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

B. The ALJ's Off Task Finding Was Proper.

Here, Bradley's assertion that the Court should remand this case for the ALJ to better explain her finding that he is able to understand, remember, and carry out instructions for 95 to 100% of an 8-hour workday is not persuasive.

First, absent a binding rule rejecting the use of a numerical off-task-time figure, it would be improper to remand here what is in essence a numerical off-task-time figure on that ground alone. *See England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 8114219, at *14-15 (E.D. Mich. July 11, 2016) ("[S]ome courts reject the use of percentages to describe [concentration, persistence, and pace] deficiencies wholesale, other courts look to whether the ALJ presented sufficient justification for the percentage chosen, and yet others reject challenges to the chosen

5

percentage unless the claimant can show that the ALJ's favored percentage is inaccurate. There is no precedent in this circuit precluding the use of a numerical off-task-time figure to represent qualitative deficits in [concentration, persistence, and pace]; rejecting the ALJ's use of the eight percent figure out of hand would be inappropriate.").

There is no such binding precedent in the Fourth Circuit, and, in fact, unpublished Fourth Circuit case law suggests quite the opposite, as it has upheld an off-task time figure like the one at issue here. *See Rebecca J. v. Kijakazi*, No. 22-1531, 2023 WL 3970022, at *3 (4th Cir. June 13, 2023) (concluding that the ALJ built a logical bridge between the administrative record and her finding that plaintiff would be off task no more than 7% of the workday).

Second, the ALJ did not determine Bradley's limitations solely by concluding that he was able to understand, remember, and carry out instructions for 95 to 100% of an 8-hour workday. That limitation was only one part of the ALJ's overall comprehensive efforts to account for Bradley's limitations. To that end, the ALJ also limited Bradley to simple tasks in a simple work setting with only occasional interaction with others. (Tr. 22.) The ALJ thus disqualified Bradley from performing any complex tasks or having frequent or constant exposure to others and, despite this, could still identify other jobs in the national economy that Bradley could perform. (Tr. 26.) And Bradley only challenges what is, in essence, the ALJ's numerical off-task finding.[2]

The question then is whether the ALJ built a logical bridge here between the record evidence and her conclusion that Bradley could understand, remember, and carry out instructions for 95 to 100% of the time. Logically, the inverse of this is true as well: whether the ALJ built a logical bridge between the record evidence and her conclusion that Plaintiff was *unable* to understand, remember, and carry out instructions for (at most) 5% of the time. Although the ALJ did not explain or set forth a formula as to why she chose a five percent off task finding instead of two percent or six percent, that lack of precision is not a reason to reverse the decision. Because: the ALJ did not find evidence showing that Bradley's ability to understand, remember, and carry out instructions was so compromised that he could not work. *See Jordan v. Soc. Sec. Admin.*, No.

---

[2] Bradley has therefore waived ALJ findings he has not challenged. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [the] argument'—even if [the] brief takes a passing shot at the issue.") (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)).

CV 17-CV-03032-JMC, 2018 WL 4354196, at *3 (D. Md. Sept. 12, 2018).

In other words, the ALJ found that his symptoms caused *some* time off task, but not a *disabling* amount of it. *See Shaw v. Kijakazi*, No. 1:20CV581, 2021 WL 3079905, at *9 (M.D.N.C. July 21, 2021) (finding no error where the ALJ found that the plaintiff "would be off task *no more than ten percent* of the time in an eight-hour workday" because "the ALJ found that [the p]laintiff's depressive disorder caused *some* limitation in [his] ability to remain on-task but not *disabling* limitations," given the vocational expert's testimony that time off-task up to ten percent was not work preclusive) (emphasis added and quotation marks omitted), *report and recommendation adopted*, No. 1:20CV581, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021). Because the ALJ's finding is supported by a logical bridge between the off task finding and the evidence in the record, there is no basis for remand.

More specifically, the ALJ identified more than substantial evidence in her decision explaining why Bradley could understand, remember, and carry out instructions for at least 95% of an 8-hour workday and would be off task for, at most, 5% of the workday. (Tr. 22.) For example, a state agency consultant (Dr. Phillip Hatfield) examined Bradley and concluded that he had no deficits in his ability to understand, remember, and carry out simple instructions. (Tr. 664.) The ALJ noted Dr. Hatfield's conclusion and found it generally persuasive, along with the rest of his medical opinion,[3] as follows: "Dr. Hatfield, a consultative examiner,

---

[3] Dr. Hatfield also found that Bradley had moderate impairments in the following domains: completing a normal workday without disruption from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the public and form working relationships with supervisors and coworkers, and tolerating the normal stress and pressures of a competitive workplace. (Tr. 664.) Dr. Hatfield did not otherwise define the term "moderate[ ] impairment"; however, under agency regulations, a claimant has a "moderate" limitation if his "functioning . . . independently, appropriately, effectively, and on a sustained basis is *fair*" whereas a "marked" limitation reflects a "serious limit[ation]." 20 C.F.R. pt. 404, subpt. P, app. E, § 12.00F.2.c-d (emphasis added); *see Joseph D. W. v. O'Malley*, No. 1:23-cv-863, 2024 WL 3822724, at *6 (M.D.N.C. Aug. 14, 2024) ("Plaintiff erroneously equates the consultants' *moderate* limitation on Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors as an '*inability*' to do so."). The ALJ addressed these moderate impairments by adopting an RFC limiting Bradley's interactions with others, performing only simple tasks, in a simple work setting, and being off task no more than five percent of the time.

7

opined the claimant's ability to understand, retain, and follow brief, simple, concrete instructions without frequent repetition or reminders is unimpaired." (Tr. 25). Given that the ALJ also limited Bradley to simple tasks (Tr. 22), this opinion constitutes substantial evidence supporting the ALJ's conclusion that Bradley could understand, remember, and carry out instructions for *at least* 95% of a workday.

Nevertheless, the ALJ also pointed to evidence of Bradley's wide array of daily activities to support her on task finding, such as playing bass guitar in a band, visiting friends, doing household chores (*i.e.*, mopping, vacuuming, dusting, and occasional yardwork), performing his full range of personal care, spending time with his minor children, and occasionally going to church with his mother. (Tr. 21, 23, 45-46, 180, 183, 196-99, 662.) The ALJ also noted that Bradley drove, shopped for groceries, and prepared simple meals. (Tr. 23, 40, 46, 181-82, 197-98.) At no point does Bradley contest the ALJ's reliance on this evidence, which supports the overall proposition that Bradley could understand, remember, and carry out instructions for at least 95% of a workday.

In fact, the performance of these activities requires understanding, remembering, carrying out instructions, and remaining on task. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (unpublished) (affirming that activities such as driving, cleaning, doing laundry, cooking, and shopping tended to support a finding that the claimant was capable of concentrating and staying on task sufficiently to perform work activities).

C. The ALJ Accounted for Bradley's Mental and Physical Limitations in Her Finding.

Regarding Bradley's mental impairments of depression and anxiety, the ALJ also accurately pointed out that he had not been hospitalized for a mental impairment during the relevant period and that his depression improved with treatment. (Tr. 21, 23-25, 43 (testifying that taking sertraline for depression helped).) Additionally, Bradley's mental status exams did not document significant difficulties with memory or concentration; he was able to answer questions about his work and medical history, and he was cooperative at his consultative and medical appointments.[4] (Tr. 21, 23-25, 39-50, 187-202, 387, 443, 464,

---

(Tr. 22.) Beyond challenging the off-task five percent limitation, Bradley does not challenge any of these additional findings or the ALJ's analysis of the same.

[4] For example, the ALJ pointed out that findings from a September 2021 mental status exam indicated that his mood was mildly anxious. (Tr. 23, 482.) His behavior was cooperative and pleasant.

8

468, 470, 472, 474, 476, 479, 482, 484, 530-32, 660-61, 787, 789, 792, 811, 817, 821, 828, 833, 837-38.) Again, this demonstrates that Bradley could understand, remember, and carry out instructions for at least 95% of a workday.

Regarding Bradley's diabetes, the ALJ recognized that he had some periods of elevated blood sugar, but his symptoms stabilized with treatment. (Tr. 23-24.) For example, Bradley sought emergency treatment for muscle aches and dizziness in December 2020 (before the alleged onset of disability), at which point his blood sugar was very high, in the 300s. (Tr. 23, 280-81) (describing symptoms and noting that Bradley "fe[lt] much better after [receiving] fluids," and requested to be discharged).) And he had elevated blood sugar in May 2022, but that was because his insulin pump was kinked. (Tr. 23, 522 ("4 days go found his pump was kinked after feeling poorly," then fixed it and sugars are running "a little high"), 524).) In September 2022, the ALJ further observed, Bradley was hospitalized for two days for diabetes complications. (Tr. 23, 780 (indicating that Bradley unhooked his insulin pump after getting COVID, after which blood sugar went up).)

Overall, however, the ALJ concluded that the evidence showed that Bradley's symptoms were "stable with treatment" (Tr. 24), a finding that he has not challenged and one consistent with his testimony that he thought he would be "able to keep [his diabetes] under control" (Tr. 41). Examinations in April 2021 and August 2022 also reflected no neurological deficits (Tr. 23, 24, 441-43, 532), which is inconsistent with complaints of nerve pain and weakness (Tr. 23). For all of these reasons, the record does not support Bradley's challenge to the ALJ's off task finding, a finding which is legally correct, supported by substantial evidence, and susceptible to judicial review.[5]

---

(Tr. 23, 482.) His affect was appropriate. (Tr. 23, 482.) He was fully oriented. (Tr. 23, 482.) His thought process, thought content, perception, and insight were within normal limits. (Tr. 23, 482.) He denied suicidal ideation. (Tr. 23, 482.) The ALJ further pointed out that during an October 2022 consultative evaluation with Dr. Hatfield, Bradley's intellectual functioning was average to low average, his affect was mildly dysthymic, his mood was "fairly good," and he denied suicidal ideation. (Tr. 24, 663-64.) Findings from an August 2023 psychiatric exam were unremarkable. (Tr. 24, 786-87.)

[5] Bradley does not challenge the ALJ's assessment of his subjective complaints. However, even if he had, the challenge would fail. The ALJ completed the two-step *Craig* analysis. To begin, the ALJ stated that she had carefully considered the evidence and found that Bradley's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 24.) The ALJ therefore discharged her duty under the

9

Bradley's objections to the contrary are not persuasive. First, contrary to his assertions, Docket Entry 9 at 13, the law does not require the ALJ to support an off-task limitation with a mathematical formula, a medical opinion, or to provide greater specificity than otherwise required to support the rest of the RFC assessment. *See Welch v. Saul*, No. 1:19-CV-189-DCK, 2020 WL 4586882, at *8 (W.D.N.C. Aug. 10, 2020) (citing cases).

Second, Bradley does not point to any other evidence that would compel greater limitations than those that the ALJ found.[6] *See Stitely v. Colvin*, No. 14-2302, 2015 WL 4621292, at *1 (4th Cir. Aug. 4, 2015) ("[The claimant] points to no 'overlooked' evidence, aside from his own allegations, which the court found not entirely credible, that would substantially aid his case."). Instead, Bradley contends that the evidence he summarizes in his brief "could reasonably lead to the conclusion that [he] would be off-task 10% or more of the workday." Docket Entry 9 at 13. But even assuming that to be the case, "[t]he substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An

---

first step of the *Craig* analysis. Then, at step two, the ALJ decided that Bradley's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 24.) The ALJ then gave numerous good reasons, supported by substantial evidence and susceptible to judicial review, in support of this conclusion.

[6] In fact, in support of his objection, Bradley points to evidence the ALJ considered, but then discounted, without directly challenging it. *See, e.g.*, Docket Entry 9 at 8-9. For example, the ALJ considered medical opinions submitted by Paul Gulley, M.D., Bradley's endocrinologist. (Tr. 24.) Among other findings, Dr. Gulley opined that Bradley could only work four hours per day until August 2021 and previously found he was unable to work on certain days and was unemployable. (Tr. 24 (citing Tr. 333, 370-73, 377, 783).) The ALJ explained that Dr. Gulley's opinions were unpersuasive, given evidence that Bradley's symptoms were "stable with treatment" and that he was "independent with daily activities," and was able to do chores, spend time with friends and his children, and play bass guitar in a band. (Tr. 25.) Bradley also points to an August 2021 letter from his therapist stating that he is disabled in light of his mental and physical health issues. Docket Entry 9 at 19, citing Tr. 455. However, the issue of disability is reserved to the Commissioner and such statements are "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled" and do not require "any analysis . . . in [the] determination or decision." 20 C.F.R. § 404.1520b(c). Bradley does not challenge the manner in which the ALJ treated any opinions and has thus waived an objection as to them. *See Grayson O Co.*, 856 F.3d at 316.

10

administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (unpublished) (internal quotation and citation omitted). Here, the ALJ pointed to more than substantial evidence showing why Bradley did not suffer disabling limitations in understanding, remembering, following instructions, or staying on task. No more is required.

Third, Bradley identifies numerous unpublished out of district cases that have remanded decisions where an ALJ included a numerical off task estimation in the RFC. Docket Entry 9 at 4-5, 12-17 and Docket Entry 13 at 2 (collecting cases). However, *all* of the cases Bradley cites in his favor predate the Fourth Circuit's decision in *Rebecca J.*, 2023 WL 3970022, at *3 (concluding that the ALJ built a logical bridge between the administrative record and her finding that plaintiff would be off task no more than 7% of the workday).

And, regardless of this, both before and after the Fourth Circuit's holding in *Rebecca J.*, judges within this district have supported such findings where—as here—it was supported by substantial evidence and susceptible to judicial review.[7]

---

[7] *See April A. J. v. Bisignano*, No. 1:24CV672, 2025 WL 2784211, at *4-7 (M.D.N.C. Sept. 30, 2025) (upholding five percent off task limitation); *Dana D. v. Kijakazi*, No. 1:20CV673, Slip Op. at 14-15 (Oct. 26, 2021) (same) *recommendation adopted by* Slip Op. (Nov. 15, 2021); *Shaw*, 2021 WL 3079905, at *8-10 (upholding ten-percent off task limitation in RFC determination), *report and recommendation adopted*, 2021 WL 6202788; *Link v. Saul*, No. 1:19CV662, 2020 WL 5044038, at *9 (M.D.N.C. Aug. 26, 2020) (holding that ALJ's findings at step two, analysis of the plaintiff's subjective symptom reporting, and evaluation of objective evidence "adequately explained the RFC's allowance for [the p]laintiff to remain off-task for up to 10 percent of the workday in addition to normal breaks"), *recommendation adopted, slip op.* (M.D.N.C. Sept. 10, 2020); *Megan M. v. Berryhill*, No. 17cv1125, Slip Op. at 16-20 (M.D.N.C. Dec. 13, 2018) (affirming ALJ decision with 5% off task limitation), *recommendation adopted by* Slip. Op. (Jan. 4. 2019); *see also Horner v. Acting Comm'r of Soc. Sec. Admin.*, No. 9:17-CV-00894-RBH, 2018 WL 4203675, at *7 (D.S.C. Sept. 4, 2018) ("Plaintiff states that the ALJ never explained why he decided to include within the RFC a limitation that Plaintiff would be 'off task' up to five percent of the workday beyond normal breaks. Plaintiff argues it is 'impossible' to discern the basis of this limitation. To the contrary, the ALJ explained that, based upon the claimant's allegations concerning her headache pain and its effects on her cognitive functioning, the ALJ was including mental limitations. The ALJ then specifically cited to activities Plaintiff is able to perform, as well as the

11

Bradley's efforts to distinguish *Rebecca J.* are unpersuasive. Docket Entry 13 at 3. The claimant's challenge in *Rebecca J.* was unsuccessful because the record was "devoid of sufficient evidence, including opinions and treatment notes, demonstrating that Plaintiff would be off task more than seven percent of the day . . . ." *Rebecca J.*, 2023 WL 3970022, at *3 (citation, quotation omitted). Bradley asserts that this is not the case here, noting opinions issued by Dr. Paul Gulley (his endocrinologist) and Ms. Stacie Adams (his therapist) and suggesting that they show "he would be off-task in excess of the ALJ's findings, rendering the ALJ's decision unsupported by substantial evidence because the ALJ failed to explain how the ALJ arrived at the specific off-task conclusions in the RFC." Docket Entry 13 at 3-4 *referencing* Tr. 333, 408-09, 402, 455, 783.

However, the ALJ in this case adequately supported her up to 5% off task finding by pointing to multiple lines of evidence (including objective medical evidence, treatment history, and daily activities), addressed the relevant medical opinions to the extent the law required (*see supra* n. 3 and 6), and left no material evidence unreconciled or unaddressed. Again, Bradley has failed to challenge any of the ALJ's findings in this case other than the up to 5% off task finding and has failed to point to evidence that would compel a different outcome. Thus, here, as in *Rebecca J.*, the ALJ identified evidence supporting her conclusion on an off task limitation and built a logical bridge from it to her conclusion that the claimant was not disabled. *See Rebecca J.*, 2023 WL 3970022, at *3.

Finally, the vocational expert testified at the administrative hearing that an inability to stay on task "10% or more of the workday" was work preclusive. (Tr. 55.) An individual could therefore be off task up to ten percent of the workday and still maintain employment. (Tr. 54-55.) That the ALJ appears to have given Plaintiff the benefit of the doubt in concluding that his physical and mental limitations could result in off-task behavior at most up to 5% of the workday—rather than zero percent or some other lesser amount—does not provide a basis to remand given that such an estimate of off-task behavior is not work preclusive. For all of these reasons, the Commissioner's decision is affirmed.

---

consultative psychological examination to find this specific limitation as it relates to her headaches."), *aff'd sub nom. Horner v. Comm'r of Soc. Sec. Admin.*, 809 F. App'x 165 (4th Cir. 2020) (unpublished) ("The ALJ applied the correct legal standards in evaluating Horner's claims for benefits, and the ALJ's factual findings are supported by substantial evidence.").

## V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is upheld.

_____
JoAnna Gibson McFadden
United States Magistrate Judge